UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDHER FLORES, individually and on behalf of other members of the general public similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>ADT LLC,<br><br>            Defendant. | Case No.: 1:16-cv-0029-AWI-JLT<br><br>ORDER VACATING THE HEARING DATE OF NOVEMBER 2, 2017<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT<br>(Doc. 32) |

Edher Flores seeks preliminary approval of the class action settlement reached with Defendant ADT LLC. (Doc. 32) By and through this motion, Plaintiff seeks: (1) conditional certification of a settlement class; (2) preliminary approval of the settlement terms; (3) appointment of Plaintiff as the class representative; (4) appointment of Capstone Law APC as Class Counsel; (5) approval of the class notice and materials; (6) appointment of CPT Group, Inc., as the claims administrator; and (7) scheduling for final approval of the settlement. (Doc. 32 at 2)

Defendant has not opposed the motion, and the Court finds the matter suitable for decision without oral arguments. Therefore, the matter is taken under submission pursuant to Local Rule 230(g) and the hearing date of November 2, 2017 is **VACATED**. For the following reasons, Plaintiff's motion for preliminary approval of class settlement is **GRANTED**.

///

# BACKGROUND

Plaintiff alleges he was employed by ADT LLC "as an hourly-paid, non-exempt Service Technician from approximately August 2012 to March 2015." (Doc. 1 at 14, ¶ 4) Plaintiff reports that "[a]s a Service Technician, [he] typically worked eleven (11) hours or more per day, five (5) days per week." (*Id.*)

According to Plaintiff, he and other Service Technicians "were not paid for all hours worked, because all hours worked were not recorded." (Doc. 1 at 20, ¶ 28) He contends, "Service Technician class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation." (*Id.*, ¶ 29) Plaintiff also alleges "Service Technician class members were entitled to be paid at a regular rate of pay, and corresponding overtime rate of pay, that included as eligible income all income derived from shift differential pay, standby bonus pay and/or holiday bonus pay." (*Id.*, ¶ 30) Further, he contends his employer failed to pay "at least minimum wages for work that [ADT LLC] knew or should have known was performed off-the-clock." (*Id.*, ¶ 31)

Plaintiff also alleges Defendant failed to provide proper meal and rest breaks under California law, asserting that he and other class members "were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period." (Doc. 1 at 20, ¶ 32) Likewise, Plaintiff contends they "were not provided compliant rest periods or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided a compliant rest period." (*Id.* at 21, ¶ 33)

Further, Plaintiff asserts Defendant failed "to provide complete and accurate wage statements," "maintain accurate payroll records," and to "pay Service Technician class members all wages due." (Doc. 1 at 21, ¶¶ 34-35) For example, Plaintiff contends Defendant knew its employees "were entitled to timely payment of wages upon termination of employment," yet failed to pay "all wages due, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within permissible time periods." (*Id.*, ¶ 35)

Based upon these facts, Plaintiff identified the following causes of action in his complaint filed in Kern County Superior Court, Case No. BCV-15-101564: (1) unpaid overtime in violation of Cal.

Labor Code §§ 510 and 1198; (2) unpaid minimum wages in violation of Cal. Labor Code §§1194, 1194, and 1197.1; (3) failure to provide proper meal periods in violation of Cal. Labor Code §§ 226.7 and 512(a); (4) failure to provide proper rest breaks in violation of Cal. Labor Code § 226.7; (5) failure to provide complaint wage statements and maintain accurate payroll records in violation of Cal. Labor Code §§ 226(a) and 1174(d); (6) failure to provide timely wages upon termination in violation of Cal. Labor Code §§ 201 and 202; (7) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200; and (8) unlawful business practices in violation of Section 17200. (*See* Doc. 1 at 22-37)

Defendant filed a Notice of Removal on January 8, 2017, thereby initiating the action in this Court. (Doc. 1) The Court entered its Scheduling Order on March 18, 2016 (Doc. 9), after which the parties engaged in discovery. Plaintiff reports that the parties conducted "extensive written discovery, and Defendant produced "more than 13,000 pages of documents, including hundreds of pages of relevant policy documents, employee wage statements, time and payroll data, and GPS tracking data." (Doc. 32 at 11) Plaintiff deposed four individuals regarding "Defendant's payroll, timekeeping, systems operations, and human resources policies." (*Id.*) In addition, Defendant deposed Plaintiff on January 17, 2017. (*Id.*)

The parties engaged in private mediation with Alan Berkowitz in February 2017. (Doc. 32 at 11) Plaintiff asserts that although the parties did not settle at the mediation, Mr. Berkowitz "provided a useful, neutral analysis of the issues and risks to both sides" and "greatly assisted … in narrowing the gap between [the parties'] respective positions." (*Id.* at 12) Plaintiff reports the parties continued in "arm's-length negotiations" after he filed a motion for class certification on March 31, 2017. (*Id.*)

In May 2017, Defendant began contacting putative class members "to seek individual settlements of the … claims against Defendant." (Doc. 32-1 at 17, Settlement ¶ 7) As a result, Defendant obtained releases from many putative class members, each of whom "received payment in the gross amount of $750.00."[1] (*Id.*)

On June 16, 2017, the parties "reached an agreement on the principal terms of a settlement" on June 16, 2017. (Doc. 28 at 2) Plaintiff now seeks preliminary approval of these terms. (Doc. 32)

---

[1] As of August 10, 2017, Defendant "obtained releases from approximately 88 Class Members, and had paid out a total of $76,989.00." (Doc. 32-1 at 17, Settlement ¶ 7)

3

**THE PROPOSED SETTLEMENT**

Plaintiff and Defendant "agreed to settle all class claims and representative claims alleged in the Action in exchange for the Class Settlement Amount of up to $310,000." (Doc. 32 at 12; *see also* Doc. 33 at 8, Settlement ¶ 10(h)) Defendant agrees to fund the Settlement for the class defined as follows:

> All persons who worked as non-exempt or hourly employees of Defendant in California as "Service Technicians" at any time from August 18, 2013 to the Preliminary Approval Date, and who do not timely opt out of participation in the Action.

(Doc. 33 at 8, Settlement ¶ 10(e)) This class excludes individuals "who previously entered into individual settlement agreements and releases with Defendant, and have received payments from Defendant in connection therewith." (Doc. 32 at 9)

**I.     Payment Terms**

The settlement fund will cover payments to class members and a payment to Plaintiff for his role as a class representative. (Doc. 33 at 14, Settlement ¶ 15) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses and to the Settlement Administrator. (*Id.* at 13-14, ¶¶ 14, 16-17) Specifically, the settlement provides for the following payments from the gross settlement amount:

- The class representative will receive $7,500;
- Class counsel will receive fees not to exceed one-third of the Class Settlement Amount (of $103,333) and expenses not to exceed $25,000;
- The settlement administrator will receive reasonable costs of administration.[2]

(Doc. 32 at 9; Doc. 33 at 14-15, Settlement ¶¶ 14-17) In addition, Defendant shall receive "a credit" for the amounts paid individuals who have released their claims ("Released Class Members"), in the amount of $76,989.00. (Doc. 33 at 13, Settlement ¶ 12)

After the identified deductions and payments, the remaining funds— the "Net Settlement Amount" — will be distributed to all participating class members. (Doc. 33 at 15, ¶ 18) Shares of the settlement for each class member will be calculated as follows:

a)   Defendant will calculate the total number of Workweeks worked by each Class

---

[2] The settlement administration costs are estimated to be $11,000. (Doc. 33 at 14, ¶ 16) The parties acknowledge settlement administration costs may exceed the current estimate, and agree "any such additional Settlement administration Costs shall be taken out of the Class Settlement Amount." (*Id.*, ¶ 17)

4

> Member during the Class Period and the aggregate total number of Workweeks worked by all Class Members during the Class Period.
>
> b) To determine each Class Member's estimated "Individual Settlement Payment," the Settlement Administrator will use the following formula: The Net Settlement Amount will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value." Each Class Member's "Individual Settlement Payment" will be calculated by multiplying each individual Class Member's total number of Workweeks by the Workweek Value.

(Doc. 33 at 16, ¶ 20 (a)-(b)) Using this formula, "[a]ll Participating Class Members will receive a minimum payment of $750." (*Id.*, ¶ 20(d)) Currently, the average net recovery is estimated to be $805 per class member. (Doc. 32 at 14)

## II. Releases

The Settlement provides that Plaintiff and Class Members, other than those who elect not to participate in the Settlement, shall release Defendant from the claims arising from August 18, 2013 through the date of final approval of the settlement. (Doc. 33 at 11, Settlement ¶ 10(y)) Specifically, the release for class members includes:

> All claims, rights, demands, liabilities, and causes of action, whether known or unknown, arising from, or related to, the same set of operative facts as those set forth in the operative complaint in the Action against the Released Parties, including any claims based on the following categories of allegations: (1) all claims for unpaid overtime pursuant to California Labor Code §§ 510 and 1198; (2) all claims for unpaid minimum wages pursuant to California Labor Code §§ 1182.12, 1194, 1197, and 1197.1; (3) all claims for failure to provide meal periods pursuant to California Labor Code §§ 226.7 and 512(a); (4) all claims for failure to provide rest periods pursuant to California Labor Code § 226.7; (5) all claims for non-compliant wage statements and failure to maintain records pursuant to California Labor Code §§ 226(a) and 1174(d); (6) all claims for wages not timely paid upon termination pursuant to California Labor Code §§ 201 and 202; and (7) all claims for unfair and/or unlawful business practices pursuant to California Business & Professions Code §§ 17200 *et seq*.
>
> Released Class Claims include all claimed or unclaimed compensatory, consequential, incidental, liquidated, punitive and exemplary damages, restitution, interest, costs and fees, injunctive or equitable relief, and any other remedies available at law or equity allegedly owed or available to the Class arising or reasonably flowing from the Class Action Complaint against the Released Parties for the time period from the beginning of each claim's applicable statute of limitations, up to and including the date of Final Approval.

(Doc. 32 at 14; Doc. 33 at 22, Settlement ¶ 42)

The release for Plaintiff encompasses more claims than the release of Class Members, and releases any claims "which have been or could have been asserted" in this action. (Doc. 33 at 23, Settlement ¶ 43) Specifically, Plaintiff's general release provides:

5

> Upon the Effective Date, as a condition of receiving any portion of his Class Representative Enhancement Payment, Plaintiff shall hereby agree to the additional following General Release: In consideration of Defendant's promises and agreements as set forth herein, Plaintiff hereby fully releases the Released Parties from any and all Released Claims and also generally releases and discharges the Released Parties from any and all claims, demands, obligations, causes of action, rights, or liabilities of any kind which have been or could have been asserted against the Released Parties arising out of or relating to Plaintiff's employment by Defendant or termination thereof and/or any other event, act, occurrence, or omission taking place on or before the Effective Date, including but not limited to claims for wages, restitution, penalties, retaliation, or wrongful termination of employment, and including any other claims whatsoever, including any interest thereon, including claims based on alleged discrimination on the basis of sex, race, national origin, ancestry, age, religion, disability, handicap, and/or veteran status, and/or any other state or federal or common law, statutory, or other claims arising out of or relating to the Plaintiff's employment by Defendant, and/or any other matters on or before the Effective Date. This release specifically includes any and all claims, demands, obligations and/or causes of action for damages, restitution, penalties, interest, and attorneys' fees, and costs relating to or in any way connected with the matters referred to herein.

(*Id*., at 23-24). Further, Plaintiff agrees to waive "all rights and benefits afforded by California Civil Code § 1542." (*Id.* at 24, ¶ 43)

### III. Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the Settlement. (*See* Doc. 33 at 18-19, Settlement ¶¶ 27-29) The proposed Notice of Class Action Settlement ("the Notice") explains the claims that are released as part of the Settlement. (Doc. 32-1 at 45) In addition, the Notice outlines the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement. (*Id.* at 45-47)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

///

# I. Conditional Class Certification

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed Settlement Class is comprised of all "all persons who worked for Defendant as non-exempt or hourly employees in California as "Service Technicians" at any time from August 18, 2013 to the Preliminary Approval Date, and who do not timely opt out of participation in the Action." (Doc. 32 at 12) Plaintiff seeks conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23, under which the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *See Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

## A. Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P.

23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, Plaintiff reports "there are approximately 110 Class Members." (Doc. 32 at 14) Therefore, the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551. In this case, Plaintiff asserts there are common questions of law and facts in this case, because the class members were subjected to the same policies as employees of ADT, LLC. (Doc. 32 at 16-24) For example, Plaintiff reports ADT had "written policies [that] required employees to travel up to 45 minutes to their first job site, and 45 minutes from their last job site, without compensation," and common questions include:

- Did ADT control employees during their commutes?
- If ADT controlled employees during their commutes, should ADT have compensated Class Members for commute time from their homes to their first job sites, and from their last job sites back to their homes?
- Did ADT maintain an unlawful policy of requiring employees to travel up to 45 minutes to their first job site, and 45 minutes from their last job site, before they were paid?

(Doc. 32 at 17) Further, Plaintiff asserts other claims against ADT present common questions of law and fact, as the Service Technicians were subjected to the uniform policies, such as how the employees were paid for on-call time, and when and how breaks could be taken. (*See id.* at 18-24) Accordingly, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this

rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Here, Plaintiff alleged he was employed by ADT "as an hourly-paid, non-exempt Service Technician from approximately August 2012 to March 2015." (Doc. 1 at 14, ¶ 4) Because Plaintiff was subjected to the same polices and application procedure as the Settlement Class Members, the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a. *Proposed class representative*

Plaintiff seeks appointment as the class representative, asserting that he "has and will represent putative Class Members with a focus and zeal true to the fiduciary obligation that he has undertaken." (Doc. 32 at 25) Further, the parties do not identify any conflicts between Plaintiff and the putative class members. Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

#### b. *Proposed class counsel*

Capstone Law seeks appointment as Class Counsel for the Settlement Class. Proposed Class Counsel report that they "have successfully certified numerous class actions by way of contested

motion in state and federal court, and have negotiated settlements totaling over tens of millions of dollars on behalf of hundreds of thousands of class members." (Doc. 32 at 25, citing Perez Decl. ¶¶8-13) Defendants do not oppose the appointment or assert Plaintiff's counsel are inadequate to represent the interest of the class. Therefore, the Court finds the lawyers at Capstone Law satisfy the adequacy requirement.

### B. Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Here, Plaintiff asserts that certification of the Class is appropriate under Rule 23(b)(3) which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiff argues the predominance requirement is satisfied because "each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues," given the policies in place by ADT. (Doc. 32 at 16; *see also id.* at 18-24) In addition, Plaintiff asserts the superiority requirement is met because "[r]esolving all Class Members' claims through a single class action is superior to a series of individual lawsuits." (*Id.* at 25) Plaintiff acknowledges that "the amount in controversy is not nearly enough to incentivize individual action," but contends that, as a result, the individual class members likely had no interest in individually pursuing litigation. (*Id.*) Therefore, the Court finds conditional certification of the proposed Settlement Class is proper under Rule 23(b)(3).

## II. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors for the Court to evaluate whether a settlement agreement meets these standards, including:

the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotation marks and citation omitted).

### A. Strength of Plaintiff's Case

In this action, Plaintiff raised eight claims that the fact-finder would be required to evaluate on the merits. The proposed settlement was reached following the exchange of written discovery and taking depositions, which allowed the parties to assess the strengths and weaknesses of the action. Accordingly, this factor weights in favor of preliminary approval of the Settlement.

### B. Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the proposed settlement is not approved, the parties would have to engage in further litigation. Plaintiff asserts:

> Plaintiff's decision to settle was influenced by the following considerations: (i) the risks of class certification; (ii) the strength of Defendant's defenses on the merits; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between now and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine)—motions that may have eliminated all or some of Plaintiff's claims, or barred evidence necessary to prove such claims; (iv) the risks associated with additional class members accepting ADT's individual settlement agreements; (v) the risk of losing at trial; (vi) the chances of a favorable verdict being reversed on appeal.

(Doc. 32 at 31) The time and expense of continued litigation could outweigh any additional recovery. As Plaintiff observes, "if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, such that there may have been less available for Class Members." (*Id.*) On the other hand, the proposed settlement provides for

11

immediate recovery. Due to the risk of the claims of class members, this factor weighs in favor of preliminary approval of the Settlement.

### C. Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, the proposed gross settlement amount totals $310,000. (Doc. 33 at 8, Settlement ¶10(h)) Given the time expended by parties in mediation and the continued negotiations prior to reaching this agreement, it appears the parties agree this amount reflects a fair compromise as to all of Plaintiffs' allegations. Indeed, in the Settlement Agreement, the parties indicate they believe the proposed amount "is a fair, adequate, and reasonable settlement of the Action." (*Id.* at 27, ¶ 57) Accordingly, the Court finds the amount offered supports preliminary approval of the Settlement.

### D. Extent of Discovery Completed and Stage of the Proceedings

Plaintiff reports that the parties "thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law." (Doc. 32 at 29) For example, Plaintiff observes that "Defendant produced over 13,000 pages of documents," including "written policies regarding the claims at issue" and "a sizable sample of employee time and payroll records that were analyzed by Plaintiff's expert." (*Id.*) The proposed settlement was reached following the exchange of written discovery and depositions, which allowed the parties to make informed decisions regarding the action. Consequently, this factor supports preliminary approval of the Settlement.

### E. Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Here, Class Counsel assert that "when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable." (Doc. 32 at 31) Similarly, Defendant indicated in the

Settlement that it "is fair, adequate, and reasonable…taking into account all relevant factors, present and potential." (Doc. 33 at 27, Settlement ¶ 57) Accordingly, the views of both Class Counsel and Defendant's counsel support preliminary approval of the Settlement.

### F. Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of Settlement Agreement, and executed the Settlement Agreement. (Doc. 33 at 30) However, the Settlement Class members have not yet received notice regarding the settlement terms. Therefore, this factor shall be revisited prior to final approval of the Settlement.

### G. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiff asserts, "The Settlement is the product of arm's length negotiations and is therefore entitled to a presumption of fairness." (Doc. 32 at 27, emphasis omitted) As the noted above, the parties first utilized an impartial mediator, and continued negotiations after the mediation with Alan Berkowitz. Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the Settlement.

### H. Attorneys' Fees

Class counsel may request attorneys' fees "not more than One Hundred Three Thousand Three Hundred Thirty Three Dollars ($103,333.00)," which represents a third of the gross settlement. (Doc. 33 at 13, Settlement ¶14) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is

approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### I. Class Representative Enhancement

Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The Settlement provides that Plaintiff may apply to the District Court for a class representative enhancement of $7,500, to be paid from the gross settlement amount. (Doc. 33 at 14, Settlement ¶15) The Settlement explains that the enhancement payment is to be given to Plaintiff "[i]n exchange for a general release, and in recognition of his efforts and work in prosecuting the Action on behalf of the Class Members." (*Id.*) However, aside from Plaintiff submitting to a deposition, he fails to identify any actions taken on behalf of the Settlement Class, or an explanation of how the class members benefited from these actions. For example, Plaintiff does not report whether he assisted with written discovery in the action or estimate the number of hours he spent meeting with Class Counsel. Accordingly, the Court is unable to evaluate the reasonableness of this requested award at this time. In seeking final approval, **Plaintiff must provide evidence supporting the requested enhancement.** Nevertheless, the Court will preliminarily approve of a class representative enhancement in an amount *up to* $7,500 for Plaintiff.

///

14

**APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR**

The parties agreed that CPT Group, Inc. would serve as the Settlement Administrator, and Plaintiff seeks approval of this appointment. (Doc. 32 at 2; Doc. 33 at 12, Settlement ¶10(cc)) The Settlement administration duties include, but are not limited to: "printing, distributing, and tracking documents for [the] Settlement; calculating estimated amounts per Class Member; tax reporting; distributing the Class Settlement Amount and Attorneys' Fees and Costs; [and] providing necessary reports and declarations." (Doc. 33 at 12, Settlement ¶10(dd)) In addition, the Settlement Administrator will have the authority to receive Requests for Exclusion and determine the validity. (*Id.* at 18, ¶¶ 27-28)

CPT Group expects to receive "reasonable costs of administration" from the Gross Settlement Amount, currently estimated to be $11,000. (Doc. 33 at 14, ¶16) However, the parties recognize the costs "may increase above the current estimate," and agree "any such additional Settlement Administration Costs shall be taken out of the Class Settlement Amount." (*Id.*, ¶17) Based upon the recommendation and request of the parties, CPT Group is appointed as the Settlement Administrator.

**APPROVAL OF CLASS NOTICE**

A class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

**I.     Content of the Notice**

Plaintiff has submitted the proposed Notice of Class Action Settlement ("the Notice") to be distributed to the class members. (Doc. 32-1 at 43-47) Upon review of the terms in the Notice, the Court finds the content is adequate. Plaintiff provides information regarding the background of the

action and claims asserted. (*Id.* at 43-44) The Notice explains the terms and provisions of the Settlement, including the payments from the Gross Settlement Amount. (*See generally id.* at 44-45) In addition, the Notice explains the rights and procedures to object to the Settlement or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id*. at 45-46) Finally, the Notice Packet explains the effect of the entry of judgment and settlement, including the release of claims. (*Id.* at 45)

## II. Method and Administration of Notice Packet

Within twenty-one days of the date of service of this Order, Defendant "provide the Class List to the Settlement Administrator and to Class Counsel." (Doc. 33 at 17, Settlement ¶ 23) This information "shall be formatted in a readable Microsoft Office Excel spreadsheet and shall include each Class Member's full name; most recent mailing address and telephone number; Social Security number; the respective number of Workweeks that each Class Member worked during the Class Period; and any other relevant information needed to calculate Settlement payments." (*Id.* at 7-8, ¶ 10(d)) Within ten days of receiving this data, the Settlement Administrator will mail the Notice to all Class Members. (*Id.* at 17, ¶¶ 24-25) For any Notice returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice. (*Id.*, ¶ 25)

Class members who elect not to participate in the Settlement will have 30 days from date the Notice is mailed to postmark a written request for exclusion from the Settlement. (Doc. 33 at 11-12, ¶10(bb)) Similarly, Class Members who wish to comment on or object to the Settlement have 30 days to mail a written objection to the Settlement Administrator, which must include:

> (a) the objector's full name, signature, address, and telephone number; (b) a written statement of all grounds for the objection accompanied by any legal support for such objection; (c) copies of any papers, briefs, or other documents upon which the objection is based; [and] (e) a statement whether the objector intends to appear at the fairness hearing.

(*Id.* at 10, ¶10(p)) Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection that includes notice of intention to appear. (*Id*.)

Prior to the hearing for final approval, the Settlement Administrator shall serve the parties and the Court with a declaration due diligence setting forth its compliance with its obligations under the

Agreement. The declaration shall include the number of Class Members to whom Notices were sent and the number of Class Members to whom the Notices were delivered.

### III. Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date and location of the hearing for Final Approval of Class Settlement, and deadlines related to objecting to the Settlement and requesting exclusion. Likewise, the documents must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator. If Plaintiffs intend to issue a Spanish language translation of the Notice, they are reminded that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, the Court **ORDERS**:

1. The hearing date of November 2, 2017 is **VACATED**;
2. Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined follows:
   > All persons who worked as non-exempt or hourly employees of Defendant in California as "Service Technicians" at any time from August 18, 2013 to the Preliminary Approval Date.
3. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

4. The proposed notice plan, as set forth above, is **APPROVED**;

5. Edher Flores is **APPOINTED** the Class Representative;

6. The law firm of Capstone Law APC is **APPOINTED** Class Counsel;

7. CPT Group, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

8. Plaintiff's request for a class representative enhancement payment is **GRANTED** preliminarily up to the amount of $7,500, subject to a petition and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. Class Counsel's requests for fees of not to exceed 33 1/3% of the gross settlement amount and expenses up to $25,000 are **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

10. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **January 19, 2018**;

11. The proposed Notice is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval no later than **October 31, 2017**;

12. Defendant **SHALL** provide the Settlement Administrator with the Class List no later than **November 14, 2017**;

13. The Settlement Administrator **SHALL** mail the approved Class Notice within ten days of receiving the Class List, or no later than **November 24, 2017**;

14. A class member who wishes to be excluded from settlement shall postmark the Exclusion Request within thirty days, or no later than **December 26, 2017**;

15. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to the Settlement Administrator no later than **December 26, 2017**;

16. A Final Approval and Fairness Hearing is SET for **February 20, 2018**, at 10:00 a.m.,

before Magistrate Judge Jennifer L. Thurston. The hearing will be located at the United States Courthouse at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement Agreement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees and costs;

17. Class Members may appear at the hearing on **February 20, 2018**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

18. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **December 26, 2017**;

19. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

20. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated: __October 24, 2017__         _____/s/ Jennifer L. Thurston__
                                    UNITED STATES MAGISTRATE JUDGE