8             **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   EDHER FLORES, individually and on behalf ) <br> of other members of the general public ) <br> 12   similarly situated, ) | Case No.: 1:16-cv-0029-AWI-JLT |
|                       ) <br> 13            Plaintiff, ) | FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION |
|                       ) <br> 14      v. ) | SETTLEMENT (Doc. 38) AND GRANTING IN PART PLAINTIFF'S MOTIONS FOR FEES AND |
|                       ) <br> 15   ADT LLC, ) | CLASS REPRESENTATIVE INCENTIVE PAYMENT (Doc. 37) |
|                       ) <br> 16            Defendant. ) | |
| 17 ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |

18         Edher Flores seeks final approval of the class action settlement reached with Defendant ADT

19   LLC. (Doc. 38) In addition, Plaintiff seeks an award of attorney's fees and costs from the Settlement

20   fund; costs for settlement administration; and a class representative enhancement. (Doc. 37) Defendant

21   does not oppose these requests, and no objections were filed by class members.

22         Because Plaintiff carries his burden to demonstrate certification of the Settlement Class is

23   appropriate under Rule 23 of the Federal Rules of Civil Procedure and that the terms of the settlement

24   are fair, reasonable, and adequate, the Court recommends Plaintiff's request for final approval of the

25   Settlement be **GRANTED**. In addition, the Court recommends Plaintiff's request for attorney fees be

26   **GRANTED** in the amount of $103,333.00; costs be awarded in the amount of $17,760.72; settlement

27   administration costs be granted in the amount of $8,500.00; and Plaintiff's request for an incentive

28   payment be **GRANTED** in the modified amount of $3,000.

# BACKGROUND

Plaintiff alleges he was employed by ADT LLC "as an hourly-paid, non-exempt Service Technician from approximately August 2012 to March 2015." (Doc. 1 at 14, ¶ 4) Plaintiff reports that "[a]s a Service Technician, [he] typically worked eleven (11) hours or more per day, five (5) days per week." (*Id.*)

According to Plaintiff, he and other Service Technicians "were not paid for all hours worked, because all hours worked were not recorded." (Doc. 1 at 20, ¶ 28) He contends, "Service Technician class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation." (*Id.*, ¶ 29) Plaintiff also alleges "Service Technician class members were entitled to be paid at a regular rate of pay, and corresponding overtime rate of pay, that included as eligible income all income derived from shift differential pay, standby bonus pay and/or holiday bonus pay." (*Id.*, ¶ 30) Further, he contends his employer failed to pay "at least minimum wages for work that [ADT LLC] knew or should have known was performed off-the-clock." (*Id.*, ¶ 31)

Plaintiff also alleges Defendant failed to provide proper meal and rest breaks under California law, asserting that he and other class members "were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period." (Doc. 1 at 20, ¶ 32) Likewise, Plaintiff contends they "were not provided compliant rest periods or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided a compliant rest period." (*Id.* at 21, ¶ 33)

Further, Plaintiff asserts Defendant failed "to provide complete and accurate wage statements," "maintain accurate payroll records," and to "pay Service Technician class members all wages due." (Doc. 1 at 21, ¶¶ 34-35) For example, Plaintiff contends Defendant knew its employees "were entitled to timely payment of wages upon termination of employment," yet failed to pay "all wages due, including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within permissible time periods." (*Id.*, ¶ 35)

Based upon these facts, Plaintiff identified the following causes of action in his complaint filed in Kern County Superior Court, Case No. BCV-15-101564: (1) unpaid overtime in violation of Cal.

Labor Code §§ 510 and 1198; (2) unpaid minimum wages in violation of Cal. Labor Code §§1194, 1194, and 1197.1; (3) failure to provide proper meal periods in violation of Cal. Labor Code §§ 226.7 and 512(a); (4) failure to provide proper rest breaks in violation of Cal. Labor Code § 226.7; (5) failure to provide complaint wage statements and maintain accurate payroll records in violation of Cal. Labor Code §§ 226(a) and 1174(d); (6) failure to provide timely wages upon termination in violation of Cal. Labor Code §§ 201 and 202; (7) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200; and (8) unlawful business practices in violation of Section 17200. (*See* Doc. 1 at 22-37)

Defendant filed a Notice of Removal on January 8, 2017, thereby initiating the action in this Court. (Doc. 1) The Court entered its Scheduling Order on March 18, 2016. (Doc. 9) Plaintiff reports that the parties conducted "extensive written discovery," and Defendant produced "more than 13,000 pages of documents, including hundreds of pages of relevant policy documents, employee wage statements, time and payroll data, and GPS tracking data." (Doc. 38 at 7) Plaintiff also deposed four individuals regarding "Defendant's payroll, timekeeping, systems operations, and human resources policies." (*Id.*) In addition, Defendant deposed Plaintiff on January 17, 2017. (*Id.*)

The parties engaged in a private mediation session with Alan Berkowitz in February 2017. (Doc. 38 at 7-8) Plaintiff asserts that although the parties did not settle at that time, Mr. Berkowitz "provided a useful, neutral analysis of the issues and risks to both sides" and "greatly assisted … in narrowing the gap between [the parties'] respective positions." (*Id.* at 8) Plaintiff reports the parties "continued arm's-length negotiations" after he filed a motion for class certification on March 31, 2017. (*Id.*)

In May 2017, Defendant began contacting putative class members "to seek individual settlements of the … claims against Defendant." (Doc. 32-1 at 17, Settlement ¶ 7) As a result, Defendant obtained releases from many putative class members, each of whom "received payment in the gross amount of $750.00."[1] (*Id.*)

On June 16, 2017, the parties "reached an agreement on the principal terms of a settlement" on June 16, 2017. (Doc. 28 at 2) The parties finalized their agreement with preparing a written settlement

---

[1] As of August 10, 2017, Defendant "obtained releases from approximately 88 Class Members, and had paid out a total of $76,989.00." (Doc. 32-1 at 17, Settlement ¶ 7)

agreement, and Plaintiff sought preliminary approval of the terms.  (Doc. 32; Doc. 33)

The Court granted preliminary approval of the settlement on October 25, 2017.  (Doc. 34)  The Court appointed Plaintiff Edher Flores as the Class Representative, and authorized him to seek an award enhancement up to $7,500.  (*Id.* at 18)  In addition, the Court appointed GPT Group, Inc. as Class Counsel, and authorized Class Counsel to seek fees that did "not to exceed 33 1/3% of the gross settlement amount and expenses up to $25,000."  (*Id.*)  On November 1, 2017, the Court approved the Class Notice that conveyed this information to class members.  (Docs. 36, 37)  In addition, the Class Notice informed class members of the class definition approved by the Court, the claims and issues to be resolved, how class members could appear through an attorney or chose to be excluded from the class, and the binding effect of a class judgment.  (*See* Doc. 36)

The Settlement Administrator mailed the Class Notice to the 117 class members.  (Doc. 38-1 at 2, Morales Decl. ¶ 5)  Of those packets, three were returned as undeliverable to the Settlement Administrator, and one had a forwarding address.  (*Id.*, ¶ 6)  The Settlement Administrator "performed skip traces to locate new mailing addresses," and re-mailed the Class Notices.  (*Id.* at 2-3, ¶ 6)  Again, one was returned as undeliverable.  (*Id.* at 3, ¶ 6)  The Settlement Administrator did not receive any Requests for Exclusion or objections to the settlement terms.  (*Id.*, ¶ 7)

Plaintiff filed the motion now pending before the Court for final approval of the Settlement on January 23, 2018.  (Doc. 38)  Defendant did not oppose the motion, and the matter was taken under submission pursuant to Local Rule 203(g).

## SETTLEMENT TERMS

Plaintiff and Defendant "agreed to settle all class claims and representative claims alleged in the Action in exchange for the Class Settlement Amount of up to $310,000."  (Doc. 32 at 12; *see also* Doc. 33 at 8, Settlement ¶ 10(h)) Defendant agrees to fund the Settlement for the class defined as follows:

> All persons who worked as non-exempt or hourly employees of Defendant in California as "Service Technicians" at any time from August 18, 2013 to the Preliminary Approval Date, and who do not timely opt out of participation in the Action.

(Doc. 33 at 8, Settlement ¶ 10(e))  This class excludes individuals "who previously entered into individual settlement agreements and releases with Defendant, and have received payments from Defendant in connection therewith."  (Doc. 32 at 9)

4

## I.   Payment Terms

The settlement fund will cover payments to class members and a payment to Plaintiff for his role as a class representative. (Doc. 33 at 14, Settlement ¶ 15) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses and to the Settlement Administrator. (*Id.* at 13-14, ¶¶ 14, 16-17) Specifically, the settlement provides for the following payments from the gross settlement amount:

- The class representative will receive $7,500;
- Class counsel will receive fees not to exceed one-third of the Class Settlement Amount (of $103,333) and expenses not to exceed $25,000;
- The settlement administrator will receive reasonable costs of administration.[2]

(Doc. 32 at 9; Doc. 33 at 14-15, Settlement ¶¶ 14-17) In addition, Defendant shall receive "a credit" for the amounts paid individuals who have released their claims ("Released Class Members"), in the amount of $76,989.00. (Doc. 33 at 13, Settlement ¶ 12)

After the identified deductions and payments, the remaining funds— the "Net Settlement Amount" — will be distributed to all participating class members. (Doc. 33 at 15, ¶ 18) Shares of the settlement for each class member will be calculated as follows:

a)  Defendant will calculate the total number of Workweeks worked by each Class Member during the Class Period and the aggregate total number of Workweeks worked by all Class Members during the Class Period.

b)  To determine each Class Member's estimated "Individual Settlement Payment," the Settlement Administrator will use the following formula: The Net Settlement Amount will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value." Each Class Member's "Individual Settlement Payment" will be calculated by multiplying each individual Class Member's total number of Workweeks by the Workweek Value.

(Doc. 33 at 16, ¶ 20 (a)-(b)) Using this formula, "[a]ll Participating Class Members will receive a minimum payment of $750." (*Id.*, ¶ 20(d)) Currently, the average net recovery is estimated to be $805 per class member. (Doc. 32 at 14)

///

---

[2] The settlement administration costs were estimated to be $11,000. (Doc. 33 at 14, ¶ 16) The parties acknowledged settlement administration costs may exceed the current estimate, and agreed "any such additional Settlement administration Costs shall be taken out of the Class Settlement Amount." (*Id.*, ¶ 17)

## II.    Releases

The Settlement provides that Plaintiff and Class Members, other than those who elect not to participate in the Settlement, shall release Defendant from the claims arising from August 18, 2013 through the date of final approval of the settlement.  (Doc. 33 at 11, Settlement ¶ 10(y))  Specifically, the release for class members includes:

> All claims, rights, demands, liabilities, and causes of action, whether known or unknown, arising from, or related to, the same set of operative facts as those set forth in the operative complaint in the Action against the Released Parties, including any claims based on the following categories of allegations: (1) all claims for unpaid overtime pursuant to California Labor Code §§ 510 and 1198; (2) all claims for unpaid minimum wages pursuant to California Labor Code §§ 1182.12, 1194, 1197, and 1197.1; (3) all claims for failure to provide meal periods pursuant to California Labor Code §§ 226.7 and 512(a); (4) all claims for failure to provide rest periods pursuant to California Labor Code § 226.7; (5) all claims for non-compliant wage statements and failure to maintain records pursuant to California Labor Code §§ 226(a) and 1174(d); (6) all claims for wages not timely paid upon termination pursuant to California Labor Code §§ 201 and 202; and (7) all claims for unfair and/or unlawful business practices pursuant to California Business & Professions Code §§ 17200 *et seq.*

> Released Class Claims include all claimed or unclaimed compensatory, consequential, incidental, liquidated, punitive and exemplary damages, restitution, interest, costs and fees, injunctive or equitable relief, and any other remedies available at law or equity allegedly owed or available to the Class arising or reasonably flowing from the Class Action Complaint against the Released Parties for the time period from the beginning of each claim's applicable statute of limitations, up to and including the date of Final Approval.

(Doc. 32 at 14; Doc. 33 at 22, Settlement ¶ 42)

The release for Plaintiff encompasses more claims than the release of Class Members, and releases any claims "which have been or could have been asserted" in this action.  (Doc. 33 at 23, Settlement ¶ 43)  Specifically, Plaintiff's general release provides:

> Upon the Effective Date, as a condition of receiving any portion of his Class Representative Enhancement Payment, Plaintiff shall hereby agree to the additional following General Release: In consideration of Defendant's promises and agreements as set forth herein, Plaintiff hereby fully releases the Released Parties from any and all Released Claims and also generally releases and discharges the Released Parties from any and all claims, demands, obligations, causes of action, rights, or liabilities of any kind which have been or could have been asserted against the Released Parties arising out of or relating to Plaintiff's employment by Defendant or termination thereof and/or any other event, act, occurrence, or omission taking place on or before the Effective Date, including but not limited to claims for wages, restitution, penalties, retaliation, or wrongful termination of employment, and including any other claims whatsoever, including any interest thereon, including claims based on alleged discrimination on the basis of sex, race, national origin, ancestry, age, religion, disability, handicap, and/or veteran status, and/or any other state or federal or common law, statutory, or other claims arising out of or relating to the Plaintiff's employment by Defendant, and/or any other matters on or before the Effective Date. This release specifically includes any and

6

all claims, demands, obligations and/or causes of action for damages, restitution, penalties, interest, and attorneys' fees, and costs relating to or in any way connected with the matters referred to herein.

(*Id*., at 23-24). Further, Plaintiff agrees to waive "all rights and benefits afforded by California Civil Code § 1542." (*Id.* at 24, ¶ 43)

## III.    Objections and Opt-Out Procedure

Any class member who wished could file objections or elect not to participate in the Settlement. (*See* Doc. 33 at 18-19, Settlement ¶¶ 27-29)  The proposed Notice of Class Action Settlement ("the Notice") explained the claims that are released as part of the Settlement.  (Doc. 32-1 at 45)  In addition, the Notice outlined the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement.  (*Id.* at 45-47)

## IV.    Service of the Class Notice Packets and Responses Received

On October 25, 2017, the Court ordered the Settlement Administrator, CPT Group, to "mail the approved Class Notice within ten days of receiving the Class List, or no later than November 24, 2017. (Doc. 34 at 18, emphasis omitted)  According to Abel Morales, a case manager with CPT Group, the Class Notices were mailed via the United States Postal Service on November 22, 2017.  (Doc. 38-1 at 2, Morales Decl. ¶¶ 5-6)

Mr. Morales reports that CPT Group did not receive any objections to the Settlement or requests for exclusion from the class.  (Doc. 38-1 at 3, Morales Decl. ¶¶ 8-9)  Likewise, the Court did not receive any objections to the Settlement.

### APPROVAL OF A CLASS SETTLEMENT

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

# I.     Class Certification[3]

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed Settlement Class is comprised of all "all persons who worked for Defendant as non-exempt or hourly employees in California as "Service Technicians" at any time from August 18, 2013 to the Preliminary Approval Date, and who do not timely opt out of participation in the Action." (Doc. 33 at 8, Settlement ¶10 (e))

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

## A.     Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1.     Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a

---

[3] Because the class was only conditionally certified upon preliminary approval of the Settlement, final certification of the Settlement Class is required.

specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, "[t]here are a total of 117 Class Members." (Doc. 38 at 8) Therefore, the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551. In this case, Plaintiff previously asserted there are common questions of law and facts in this case, because the class members were subjected to the same policies as employees of ADT, LLC. (Doc. 32 at 16-24) For example, Plaintiff reported ADT had "written policies [that] required employees to travel up to 45 minutes to their first job site, and 45 minutes from their last job site, without compensation," and common questions include:

- Did ADT control employees during their commutes?
- If ADT controlled employees during their commutes, should ADT have compensated Class Members for commute time from their homes to their first job sites, and from their last job sites back to their homes?
- Did ADT maintain an unlawful policy of requiring employees to travel up to 45 minutes to their first job site, and 45 minutes from their last job site, before they were paid?

(Doc. 32 at 17) Further, Plaintiff asserted other claims against ADT present common questions of law and fact, because the Service Technicians were subjected to uniform policies, such as how the employees were paid for on-call time, and when and how breaks could be taken. (*See id.* at 18-24) Accordingly, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality

is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff alleged he was employed by ADT "as an hourly-paid, non-exempt Service Technician from approximately August 2012 to March 2015." (Doc. 1 at 14, ¶ 4) Because Plaintiff was subjected to the same polices and application procedure as the Settlement Class Members, the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a. *Class representative*

Plaintiff seeks appointment as the class representative, asserting that he "has and will represent putative Class Members with a focus and zeal true to the fiduciary obligation that he has undertaken." (Doc. 32 at 25) Further, the parties do not identify any conflicts between Plaintiff and the putative class members. Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

#### b. *Class counsel*

As the Court noted previously, attorneys at Capstone Law "have successfully certified numerous class actions by way of contested motion in state and federal court, and have negotiated settlements totaling over tens of millions of dollars on behalf of hundreds of thousands of class members." (Doc. 34 at 9-10, citation omitted) In addition, Defendant did not oppose the appointment

or assert the attorneys are inadequate to represent the interest of the class. Therefore, the Court finds the attorneys at Capstone Law satisfy the adequacy requirement.

**B.      Certification of a Class under Rule 23(b)(3)**

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Here, Plaintiff asserts that certification of the Class is appropriate under Rule 23(b)(3) which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

1.      Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).  Here, as Plaintiff asserted, the predominance requirement is satisfied because "each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues," given the policies in place by ADT.  (*See* Doc. 32 at 16; *see also id.* at 18-24)

2.      Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

*a.      Class members' interest in individual litigation and other cases*

This factor is relevant when class members have suffered sizeable damages or have an emotional stake in the litigation. *See In re N. Dist. of Cal., Dalkon Shield*, 693 F.2d 847, 856 (9th Cir. 1982). In this case, as Plaintiff acknowledged that "the amount in controversy is not nearly enough to incentivize individual action," but contends that, as a result, the class members likely did not have any interest in individually pursuing litigation. (Doc. 32 at 25) Indeed, no class members have requested exclusion from this Settlement, or have indicated a desire to pursue litigation apart from this action. In addition, the parties have not identified any other pending litigation related to Plaintiff's claims. Therefore, these factors weigh in favor of class certification.

*b.      Desirability of concentrating litigation in one forum*

Because common issues predominate on Plaintiff's class claims, "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011). Moreover, because the parties have resolved the claims through the Settlement, this factor does not weigh against class certification.

*c.      Difficulties in managing a class action*

The Supreme Court explained that, in general, this factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). However, because the parties have reached a settlement agreement, it does not appear there are any problems with managing the action. Therefore, this factor weighs in favor of class certification.

### 3.      Conclusion

Plaintiff carries his burden to demonstrate the predominance and superiority requirements of are satisfied, and that the Settlement Class is maintainable under Rule 23(b)(3). Accordingly, the Court recommends that Plaintiff's request to certify the Settlement Class be **GRANTED.**

## II.      Approval of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Approval is required to ensure settlement is consistent with Plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit identified several factors for the Court to evaluate whether an agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether a settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotation marks and citation omitted).

## A.    Strength of Plaintiff's Case

When measuring the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp 1379, 1388 (D. Az. 1989))

In this action, Plaintiff raised eight claims that the fact-finder would be required to evaluate on the merits. The proposed settlement was reached following the exchange of written discovery and taking depositions, which allowed the parties to assess the strengths and weaknesses of the action. (*See* Doc. 38 at 12-13) Accordingly, this factor weights in favor of approval of the Settlement.

## B.    Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the Settlement is not approved, the parties would have to engage in further litigation. Here,

> Plaintiff's decision to settle was influenced by the following considerations:
> (i) the risks of class certification; (ii) the strength of Defendant's defenses on the merits; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between now and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine)—motions that may have eliminated all or some of Plaintiff's claims, or barred evidence necessary to prove such claims; (iv)

13

the risks associated with additional class members accepting ADT's individual settlement agreements; (v) the risk of losing at trial; (vi) the chances of a favorable verdict being reversed on appeal.

(Doc. 38 at 13)  The time and expense of continued litigation could outweigh any additional recovery. As Plaintiff observes, "if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, such that there may have been less available for Class Members." (*Id.*)  On the other hand, the proposed settlement provides for immediate recovery.  Due to the risk of the claims of class members, this factor weighs in favor of preliminary approval of the Settlement.

### C.    Maintenance of Class Status through Trial

Notably, a class had not been certified by this Court at the time the parties reached an agreement of the claims presented.  Although Defendant has not opposed class certification for settlement purposes, it is likely that class certification would have been contested.  Accordingly, the Court finds this factor weighs in favor of approval of the Settlement.

### D.    Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

The proposed gross settlement amount totals $310,000.  (Doc. 33 at 8, Settlement ¶10(h))  Given the time expended by parties in mediation and the continued negotiations prior to reaching this agreement, it appears the parties agree this amount reflects a fair compromise as to all of Plaintiff's allegations.  Indeed, in the Settlement Agreement, the parties indicate they believe the proposed amount "is a fair, adequate, and reasonable settlement of the Action." (*Id.* at 27, ¶ 57)  Based upon the parties' agreement that this amount provides adequate compensation for class members, the Court finds the amount offered supports approval of the class settlement.

///

### E.    Extent of Discovery Completed and Stage of the Proceedings

Plaintiff reports that the parties "thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law." (Doc. 38 at 14-15)  For example, Plaintiff observes that "Defendant produced over 13,000 pages of documents," including "written policies regarding the claims at issue" and "a sizable sample of employee time and payroll records that were analyzed by Plaintiff's expert." (*Id.* at 15)  In addition, he reports:

> Class Counsel performed an exhaustive investigation into the claims at issue, which included: (1) determining Plaintiff's suitability as a putative class representative through interviews, background investigations, and analyses of his employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) interviewing putative Class Members to gather information about potential claims, identify additional witnesses, and obtain declarations in support of the motion for class certification; (5) analyzing ADT's labor policies and practices; (6) deposing ADT's persons most knowledgeable; (7) defending Plaintiff's deposition; (8) researching settlements in similar cases; (9) conducting a discounted valuation analysis of claims; (10) drafting the mediation brief; (11) participating in mediation; [and] (12) preparing a filing a motion for class certification…

(*Id.* at 15)

As reported by Plaintiff, the parties entered into the settlement agreement following the exchange of written discovery, Plaintiff's deposition, and the filing of a motion for class certification. Due to the extent of discovery and the stage reached in litigation reached prior to the agreement, the parties were able to make informed decisions.  Thus, this factor supports approval of the Settlement.

### F.    Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Class Counsel assert that "when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable." (Doc. 38 at 24)  Similarly, Defendant indicated in the Settlement that it "is fair, adequate, and reasonable…taking into account all relevant factors, present and potential." (Doc. 33 at 27, Settlement ¶ 57)  Accordingly, the views of both Class Counsel and Defendant's counsel support final approval of the Settlement.

### G.    Reaction of Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a

strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. Significantly, no class members objected to the Settlement or requested exclusion from the Class. In addition, Plaintiff agreed to the terms and executed the Settlement Agreement. (Doc. 33 at 30) Therefore, this factor weighs in favor of the Settlement.

### H. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiff asserts that "the Settlement is the result of arm's-length negotiations by experienced counsel." (Doc. 38 at 14) As the noted above, the parties first utilized an impartial mediator, and continued negotiations after the mediation with Alan Berkowitz. Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of final approval of the Settlement.

## IV. Conclusion

The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement, which is fair, reasonable, and adequate as required by Rule 23. Therefore, the Court recommends final approval of the Settlement Agreement be **GRANTED**.

## REQUEST FOR ATTORNEYS' FEES AND COSTS

Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be awarded pursuant to Rule 23(h). Pursuant to the Settlement, Class counsel may request attorneys' fees "not more than One Hundred Three Thousand Three Hundred Thirty Three Dollars ($103,333.00)," which represents a third of the gross settlement fund. (Doc. 33 at 13, Settlement ¶14) Here, Class Counsel seeks fees totaling $103,330.00 and $17,760.72 in litigation costs and expenses. (Doc. 37 at 8, 25)

Under the "common fund" doctrine, attorneys who create a common fund for a class may be awarded their fees and costs from the fund. *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). An award

from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense," and as such application of the doctrine is appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 478. The Settlement applies a distribution formula to determine the amount paid to each class member (*see* Doc. 33 at 16, Settlement ¶ 20(b)), and application of the common fund doctrine is appropriate.

## I.     Legal Standards

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement" to determine whether it is "'fundamentally fair, adequate, and reasonable' Fed.R.Civ.P. 23(e)." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To do so, the Court must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.*

A court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

*Id.* at 1302 (internal quotation marks, citation omitted). As a result, the district court must assume a fiduciary role for the class members in evaluating the reasonableness of a request for fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

Class Counsel assert the reasonableness of the fee request should be evaluated under California law, because the Court has diversity jurisdiction over this action. (Doc. 37 at 12, citing *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting the Ninth Circuit applied state law "in the method of calculating the fees"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Circ. 2002) (holding state law governing underlying claims in a diversity action "also governs the award of fees")). Notably, as discussed below, both state and federal courts consider similar tests to evaluate the reasonableness of the fees requested from a settlement fund.

The Court may use either a lodestar or percentage calculation to evaluate a fee request. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (holding both a lodestar and percentage calculations "have [a] place in determining what would be reasonable compensation"); *Lafitte v. Robert Half Int'l Inc.,* 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts.").

A.      **Lodestar Method**

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Lafitte*, 1 Cal. 5th at 489. The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of*

*Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Next, the Court may adjust the lodestar upward or

downward using a "multiplier" considering the following factors adopted by the Ninth Circuit in a

determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[4]

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Likewise, under California law,

"[o]nce the court has fixed the lodestar, it may increase or decrease that amount by applying a positive

or negative multiplier to take into account a variety of other factors, including the quality of the

representation, the novelty and complexity of the issues, the results obtained, and the contingent risk

presented." *Laffitte*, 1 Cal.5th at 489 (internal quotation marks omitted).

### B.   Percentage from the common fund

As the name suggests, under this method, "the court makes a fee award on the basis of some

percentage of the common fund." *Florida*, 915 F.2d at 545 n. 3. In the Ninth Circuit, the typical range

of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the

benchmark. *See, Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon*, 150 F.3d

at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark award for

attorney fees"). California has recognized that fee awards "average around one-third of the recovery,"

but has also endorsed the federal benchmark. *See Chavez v. Netflix, Inc.,* 162 Cal.App.4th 43, 66 n.

11(2008); *see also In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557 n. 13, 96 Cal. Rptr. 3d

127 (2009) ("25 percent is the benchmark award that should be given in common fund cases"). The

percentage awarded may be adjusted below or above the benchmark, but the Court's reasons for

adjustment must be clear. *Paul*, 886 F.2d at 272.

When evaluating whether the requested percentage of a common fund is reasonable, courts may

---

[4] However, the Court has since determined that the nature of a fee and the "desirability" of a case are no longer relevant factors. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992))

19

consider a number of factors, including: (1) the results obtained for the class; (2) the risk undertaken by class counsel, including the complexity of the issues; (3) the length of the professional relationship between class counsel and the plaintiffs; and (5) the market rate, through a lodestar cross-check. *See Vizcaino*, 290 F.3d at 1048-1050; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see also Lafitte*, 1 Cal. 5th 480 (determining the reasonableness of percentage fee through considering "the risks and potential value of the litigation;" the "contingency, novelty and difficulty" of the case; and "the skill shown by counsel, the number of hours worked, and the asserted hourly rates").

## II. Evaluation of the Fees Requested

Class Counsel request the Court determine the reasonableness of the fee award by using the percentage of the common fund rather than the lodestar method. (*See* Doc. 37-1 at 11-22). Notably, the Court must consider similar factors under either method. Further, the Court may "appl[y] the lodestar method as a crosscheck" to determine whether the percentage requested is reasonable. *Vizcaino*, 290 F.3d at 1050, n.5; *see also Lafitte*, 1 Cal. 5th 480.

### A. Time and labor required

Class Counsel report they have worked 545.0 hours on work related to this action, including 50.9 hours by Raul Perez, 136.9 hours by Arnab Banerjee, 44.3 hours by Eduardo Santos, 243 hours by Brandon Brouillette, and 69.9 hours by Ruhandy Glezakos. (Doc. 37-1 at 6, Perez Decl. ¶12) However, there is no evidence that Class Counsel were precluded from other work because of the pendency of this litigation.

### B. Results obtained for the class

Courts have recognized consistently that the result achieved is a major factor to be considered in making a fee award. *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). Class members will receive an average of share of approximately $760, which Class Counsel report "is comparable to, if not higher than, other court-approved wage and hour settlements." (Doc. 37 at 18, citations omitted) Given the results achieved by counsel on behalf of class members, this factor supports an award of the fees requested.

///

**C.      Risk undertaken by counsel**

The risk of costly litigation and trial is an important factor in determining the fee award. *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994). The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

There is no evidence that Class Counsel faced extreme risks in pursuing this litigation. For example, in *Vizcaino*, the plaintiffs "lost in the district court—once on the merits, once on the class definition" and the class counsel twice "succeeded in reviving their case on appeal." *Id.*, 290 F.3d at 1303. The court found the pursuit of the case was "extremely risky" given the absence of supporting precedents" and the challenges faced in the appeals. *Id.* As such, the risks supported an award of fees slightly above the benchmark. *Id.* at 1048-49. In contrast, here, though Defendant denied liability, Class Counsel were not faced with a challenge to merits of the claims or the propriety of class certification. On the other hand, as discussed above, the decision to settle was influenced by "the risks associated with additional class members accepting ADT's individual settlement agreements." (Doc. 38 at 13) Thus, Class Counsel faced a risk of their work on behalf of the class being thwarted through individual settlements, and this factor supports the requested fees.

**D.      Complexity of issues and skill required**

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award. *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award").

Class Counsel report they "are seasoned attorneys with considerable experience in wage and hour class actions." (Doc. 37 at 21) (citing Doc. 37-1, Perez Decl. ¶¶ 8-11; Exh. 1) Class Counsel

assert their "skill at identifying and then marshalling the evidence and arguments in support of certification and liability allowed them to present a compelling case at mediation, ultimately paving the way for the eventual settlement between the Parties." (*Id.* at 22) Indeed, the Court finds Class Counsel displayed skills consistent of those that would be expected of attorneys of comparable experience. Therefore, this factor supports the requested fee award.

### E. Length of professional relationship

Class Counsel initiated this action on behalf of Plaintiff in November 2015, and the matter was resolved following mediation in June 2017. The short duration of the professional relationship may warrant an award below the benchmark. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (finding "the 25 percent standard award" was appropriate although "the litigation lasted more than 13 years").

### G. Lodestar Crosscheck and Market Rate

In general, the first step in determining the lodestar is to determine whether the number of hours expended was reasonable. *Fischer*, 214 F.3d at 1119; *Lafitte*, 1 Cal. 5th 480. However, when the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours." *See Schiller*, 2012 WL 2117001 at *20 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir.2005); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D. Cal. 2007)). The Court has reviewed the billing records provided by counsel (Doc. 37-1 at 26-55), and finds the 545.0 hours reported were reasonable for the tasks completed. With this amount of time, Class Counsel reports its lodestar is $235,177.00. (Doc. 37 at 24; *see also* Doc. 37-1 at 6, Perez Decl. ¶ 12)

Significantly, however, the hourly fees used to calculate this amount—ranging from $245 to $725 per hour— must be reduced to reflect the market rate within this community. The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California,

Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

The fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The applicant meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate.") Though Class Counsel assert their hourly rates "have been consistently approved by federal and state courts over the past several years" (Doc. 37-1 at 6, Perez Decl. ¶ 6), they fail to identify any case within the Eastern District approving their hourly rates.

Recently, this Court has reviewed the billing rates for the Fresno Division and concluded that "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Id.* (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.[5]

The hours for Mr. Perez, who has been admitted to practice for more than twenty ears, will be calculated at the rate of $400 per hour. For Arnab Banerjee and Eduardo Santos, who have been

---

[5] Although rates for outside of the relevant forum may be employed if local counsel is unavailable, Plaintiff's counsel do not assert that local counsel was unavailable. Thus, they fail to meet their burden to show that hourly rates other than those of the Fresno Division should be sued for purposes of calculating the lodestar. *See Camacho, 523 F.3d at 979; Barjon v. Dalton*, 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and instead reduced the award to the hourly rates in the relevant community).

practicing since 2007, the hourly rate is adjusted to $300. The hours completed by Brandon Brouillette, who has been practicing law for eight years, will be calculated at the rate of $225 per hour. Finally, the hourly rate for Ruhandy Glezakos, who has been practicing for less than five years, is adjusted to $175 per hour. This results in a lodestar of $141,627.50:

| LEGAL PROFESSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Raul Perez | 50.9 | $400 | $20,360.00 |
| Arnab Banerjee | 136.9 | $300 | $41,070.00 |
| Eduardo Santos | 44.3 | $300 | $13,290.00 |
| Brandon Brouillette | 243.0 | $225 | $54,675.00 |
| Ruhandy Glezakos | 69.9 | $175 | $12,232.50 |
| | | | $141,627.50 |

Notably, the lodestar exceeds the amount of fees requested by Class Counsel. Thus, the lodestar cross check supports a conclusion that the fees requested are reasonable. *See Gonzalez*, 729 F.3d at 1202; *Lafitte*, 1 Cal. 5th at 489. Accordingly, the Court recommends the request for a fee award in the amount of $103,333.00 be **GRANTED**.

### REQUESTS FOR COSTS

**I.     Litigation Costs**

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54. Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Here, Plaintiff's counsel seeks a total reimbursement of $17,760.73 for costs incurred in the course of this action. (Doc. 37 at 25) Class Counsel report this total "includes court fees, mediation fees, and travel-related expenses that would normally be billed to a paying client. (*Id.*, citing Doc. 37-1, ¶ 15)

Previously, this Court noted costs "including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed in these types of cases." *Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011). Accordingly, the Court recommends Class Counsel's request for litigation costs in the amount of $17,760.73 be **GRANTED**.

**II.     Costs of Settlement Administration**

The Settlement authorizes the reimbursement of "reasonable costs of administration," which

were estimated to be $11,000.00.  (Doc. 32 at 14, ¶ 16)  Mr. Morales now reports that "CPT's costs in connection with the administration of this Settlement are $8,500.00."  (Doc. 38-1 at 3, ¶ 10)

Notably, the administrative expenses requested are within the range of previous costs for claims administration awarded in this District.  *See, e.g, De Santos v. Jaco Oil Co.*, 2015 WL 5732829 (E.D. Cal. Sept. 29, 2015) ($10,000 settlement administration fee awarded in wage an hour case involving approximately 766 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case involving approximately 170 potential class members).  Accordingly, the Court recommends that the request for $8,500.00 in expenses for the settlement administration by CPT Group be **GRANTED**.

## PLAINTIFF'S REQUEST FOR AN INCENTIVE AWARD

The Settlement provides that Plaintiff may apply to the District Court for a class representative enhancement of $7,500, to be paid from the gross settlement amount.  (Doc. 33 at 14, Settlement ¶15) The Settlement explains that the enhancement payment is to be given to Plaintiff "[i]n exchange for a general release, and in recognition of his efforts and work in prosecuting the Action on behalf of the Class Members."  (*Id.*)

In the Ninth Circuit, a court has discretion to award a class representative a reasonable incentive payment.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.  Incentive payments for class representatives are not to be given routinely.  In *Staton*, the Ninth Circuit observed:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

*Id.* at 975.  In evaluating a request for an enhanced award to a class representative, the Court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Id.* at 977.  Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

## I.  Actions taken to benefit the class and time expended

Plaintiff reports that prior to filing the complaint in this action, he had "multiple conferences about the factual bases for the claims," and "closely reviewed" a draft "to ensure accuracy and completeness." (Doc. 37-2 at 2, Flores Decl. ¶¶ 3-4)  In addition, Plaintiff asserts he "regularly contacted [the] attorneys to stay current on the status of the litigation, and to discuss [the] attorneys' progress in prosecuting the claims." (*Id.*, ¶ 4)  According to Plaintiff, he also "spent considerable time working with [his] attorneys to prepare responses to ADT's discovery requests, including interrogatories and document request." (*Id.* at 2-3, ¶ 5)  Further, Plaintiff submitted to a deposition on January 17, 2017. (*Id.* at 3, ¶ 6)  He also filed a declaration in support of the motion for class certification filed in March 2017. (*Id.*, ¶ 7)  In total, Plaintiff estimates he "spent between 50 and 55 hours assisting … in the prosecution of this lawsuit." (*Id.*, ¶ 9)

Notably, Plaintiff would have taken many of these same actions if prosecuting this action on behalf of himself as an individual, rather than as a class representative.  Nevertheless, undoubtedly, his actions benefitted the class such that they weigh in favor of an incentive payment.

## II.  Fears of workplace retaliation

Plaintiff does not contend he feared retaliation for their connections to this action, and because Plaintiff is a former employee of Defendant, retaliation is not possible.  Further, there is no support for Plaintiff's speculation that he "assumed considerable reputational risk" (*see* Doc. 37 at 27) for the filing of this action.  Thus, this factor does not support incentive payments to Plaintiff.

## III.  Reasonableness of Plaintiff's request

Considering the actions taken by Plaintiff and the time expended, an incentive award is appropriate.  In determining the amount to be awarded, the Court may consider the time expended by the class representative, the fairness of the hourly rate, and how large the incentive award is compared to the average award class members expect to receive.  *See, e.g., Ontiveros v. Zamora*, 2014 WL 5035935 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11

(considering the time and financial risk undertaken by the plaintiff). Considering these factors, the $7,500 award that Plaintiff requests is out of proportion to the efforts made and time expended

### A.     Time expended

In *Alvarado*, the Court noted the class representatives "(1) travelled from Bakersfield to Sacramento for mediation sessions; (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation." *Id.*, 2011 WL 1883188 at *11. Further, the Court noted the plaintiffs "undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant." *Id.* In light of these facts, the Court found an award of $7,500 for each plaintiff was appropriate for the time, efforts, and risks undertaken.

Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class." *Bond*, 2011 WL 2648879, at *15. Similarly, the Northern District determined class representatives failed to justify incentive awards of $10,000 although the plaintiffs reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement." *Wade v. Minatta Transport Co.*, 2012 U.S. Dist. LEXIS 12057, at *3 (N.D. Cal. Feb. 1, 2012).

In this case, the extent to which Plaintiff assisted with discovery is unclear. Further, though Plaintiff submitted to a deposition—which he likely would have done even for claims brought on his own behalf— Plaintiff did not participate in mediation. Thus, it appears the inconvenience suffered by Plaintiff was minimal, and the time expended does not support the requested enhancement of $7,500.

### B.     Fairness of the hourly rate

Recently, this Court criticized a requested award of $20,000 where the plaintiff estimated "he spent 271 hours on his duties as class representative over a period of six years," because the award

would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 2014 WL 5035935 at *5-6. The Court explained that "[i]ncentive awards should be sufficient to compensate class representatives to make up for financial risk . . . for example, for time they could have spent at their jobs." *Id.* at *6 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). The Court found an award of "$50 per hour fairly compensate[] the named plaintiff for his time and incorporates an extra incentive to participate in litigation," considering that the plaintiff's hourly flat rate while employed by the defendant was $15 per hour. *Id.* at *6; n.3. Nevertheless, the Court increased the award from $13,550 (calculated with $50 per hour for the 271 hours) to $15,000 because "Mr. Ontiveros relinquished the opportunity to bring several of his own claims." *Id.* at *6.

The estimated 55 hours of tasks taken by Plaintiff when compared to the requested award of $7,500, would compensate Plaintiff at a rate of $136.36 per hour. If the Court were to adopt the $50 per hour rate recently approved in *Ontiveros*, Plaintiff's incentive award would be reduced to $2,750.

### C.    Comparison of the award to those of the Class Members

*In Rankin*, the Court approved an incentive award of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 U.S. Dist. LEXIS 72250, at *5. The Court found the amount reasonable, in part because "the sum is reasonably close to the average per class member amount to be received." *Id.* In contrast, here Plaintiff seeks an award of $7,500, which nearly ten times the average award for Class Members. (*See* Doc. 37 at 18) (estimating the average award for class members is $760). Consequently, this factor does not favor an award in the amount requested.

### IV.    Amount to be awarded

Given the lack of information related to the actions taken by Plaintiff and the minimal time expended, the Court is unable to find the requested award of $7,500 is appropriate. However, Plaintiff clearly expended efforts on behalf of the class, submitted to a deposition, and participated in mediation. In light of the factors addressed above, the Court finds $3,000 is an appropriate incentive award. In addition, this results in an hourly rate which is similar to the hourly rate approved by the Court in *Ontiveros*. Thus, the Court recommends Plaintiff's request for an incentive payment be **GRANTED** in the modified amount of $3,000.

## FINDINGS AND RECOMMENDATIONS

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, the Court **RECOMMENDS**:

1. Plaintiff's motion for final approval of the Settlement Agreement be **GRANTED**;

2. Certification of the Settlement Class be **GRANTED** and defined as:

   > All persons who worked as non-exempt or hourly employees of Defendant in California as "Service Technicians" at any time from August 18, 2013 to the October 25, 2017.

3. Plaintiff's' request for class representative incentive payments be **GRANTED** in the modified amount of $3,000.00;

4. Class Counsel's motion for attorneys' fees be **GRANTED** in the amount of $103,333.00, which is 33% of the gross settlement fund;

5. Class Counsel's request for costs **GRANTED** in the amount of $17,760.72;

6. The request for fees for the Settlement Administrator, GPT Group, be **GRANTED** in the amount of $8,500.00;

7. The action be dismissed with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

8. The Court retain jurisdiction to consider any further applications arising out of or in connection win the Settlement.

///

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 27, 2018**            **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE